**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Judith G. Jones,** | : | **Civil Action** |
| **Plaintiff** | : | |
| | : | **No. 18 - 2772 - JLS** |
| *v.* | : | |
| | : | |
| **Nordic Naturals, Inc.** | : | |
| **Defendant** | : | **Jury Trial Demanded** |

FILED

SEP 12 2018

KATE BARKMAN, Clerk
By_____Dep. Clerk

**AMENDED COMPLAINT**

Judith G. Jones, Plaintiff, by her attorney, Jana R. Barnett, Esq., alleges as follows:

## I.    INTRODUCTION

1.  This is an action seeking redress for discrimination based on sex, in contravention of Title

    VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII"), the Equal Pay

    Act of 1963, 29 U.S.C. §206(d) ("Equal Pay Act"), and the Pennsylvania Equal Pay Law,

    43 Pa.C.S. §336.1, *et seq.*

2.  Ms. Jones, a female citizen of the United States, seeks equitable and monetary relief for

    Nordic Naturals' unlawful actions, including back pay and benefits, front pay and

    benefits, compensation for physical and emotional pain and suffering, reimbursement of

    expenses, costs, attorney's fees, punitive damages, and all other relief to which she is

    entitled by Title VII and the Civil Rights Act of 1991, as well as the Equal Pay Act and

    the Pennsylvania Equal Pay Law.

## II. JURISDICTION AND VENUE

3.  This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. §1331,

and 42 U.S.C. §2000e *et seq.* (§706).

4.  This Court has jurisdiction over Plaintiff's Equal Pay Act claims pursuant to 28 U.S.C. §1331.

5.  This Court has ancillary jurisdiction over Plaintiff's state law claims which are substantially related to the federal claims pursuant to 28 U.S.C. § 1367.

6.  Venue in this district is appropriate pursuant to 28 U.S.C. §1391(b).  The unlawful acts and practices of sex discrimination were committed by the Defendant in Berks County, Pennsylvania.  Nordic Naturals, Inc. provided equipment and supplies for Ms. Jones to use in her home office.  Ms. Jones would have worked from her home in Berks County, Pennsylvania, but for Defendant's unlawful discrimination.  Defendant Nordic Naturals, Inc. remitted Ms. Jones' income taxes to the Commonwealth of Pennsylvania.  It remitted earned income taxes and per capita taxes imposed by the Borough of Wyomissing, Pennsylvania.  Wyomissing, Pennsylvania and Berks County, Pennsylvania are within the Eastern District of Pennsylvania.

## III.  PARTIES

7.  Plaintiff Judith G. Jones is an adult citizen of the Commonwealth of Pennsylvania who resides in Berks County, Pennsylvania.

8.  Defendant Nordic Naturals, Inc. is headquartered at 111 Jennings Drive, Santa Cruz, California 95076.  Throughout the term of Ms. Jones' employment by Nordic Naturals, Inc., she was based in her home in Berks County, Pennsylvania.  Nordic Naturals is an employer within the meaning of Title VII of the Civil Rights Act of 1964.

## IV.   **FACTUAL BACKGROUND**

9. Ms. Jones began working for Nordic Naturals, Inc. as an independent contractor in 2003.

10. She became an employee of Nordic Naturals in March 2013, when she was hired as a Senior Sales Consultant.

11. While an independent contractor and Senior Sales Consultant, Ms. Jones achieved average yearly sales grown of more than twenty-five per cent (25%); she was the leading sales performer in her division from 2013 - 2016.

12. Nordic Naturals, Inc. promoted Ms. Jones to the position of National Field Sales Manager on or about July 1, 2016.  She reported directly to the National Sales Manager; managed up to eight (8) outside sales representatives; worked with the department manager to bring opportunities forward; and supported and nurtured relationships with larger key accounts.

13.  On November 1, 2016, the position of National Sales Manager became open.

14. On November 2, 2016, Nordic Naturals, Inc.'s President and Chief Executive Officer (Joar Opheim) appointed Ms. Jones to be the Interim National Sales Manager.

15. Ms. Jones held the position of Interim National Sales Manager until approximately January 6, 2017.

16. On or about November 7, 2016, Mr. Opheim seemed to hire Ms. Jones for the position of National Sales Manager.  He asked, "Do you think you can do this?"  She replied, "I know I can do this!"  Then he said, "All right, let's get started!"

17. Mr. Opheim and Ms. Jones discussed restructuring the department, adding more field sales consultants, focusing on the functional medicine field, and how often she would need to travel to corporate.

18. Mr. Opheim said that Ms. Jones would have to come to corporate pretty often in the beginning, and then she could work like the Retail National Sales Manager (who performed the job while living in Nebraska). Ms. Jones told the CEO that she could come to corporate two (2) weeks per month for as long as necessary.

19. Mr. Opheim and Ms. Jones agreed that Ms. Jones would work on getting the right people in the right places, cut the waste for marketing materials, analyze and cut the 2017 budget for conferences, work with Marketing to redesign a new conference booth, and work with the Education / Marketing Department to get more meaningful print and digital campaigns.

20. Mr. Opheim told Ms. Jones to talk to Kristi Abundis of the Human Resources Department to make this happen. When Ms. Jones informed Ms. Abundis that Mr. Opheim had made her the National Sales Manager, Ms. Abundis said that it didn't work that way, and that the position needed to be advertised.

21. When Ms. Jones shared what Ms. Abundis said with Mr. Opheim, he said that they tried to make decisions as a management team, but that he had the ultimate power on these decisions.

22. On or about November 8, 2016, Ms. Jones was given about ninety (90) minutes notice that she would be interviewed, and would need to bring a resume to the interview. She was interviewed once by a committee of three (3) people.

23. Some time during the following week or two, Kip Horton (male) was interviewed. His interview process differed from Ms. Jones' interview process. For example, he was interviewed by several committees. People who interviewed Mr. Horton did not interview Ms. Jones. Different questions were posed to Ms. Jones and Mr. Horton. He

-4-

was given more than ninety (90) minutes' notice of the interviews.

24. Some time before December 25, 2016, Nordic Naturals, Inc. offered the job of National Sales Manager to Mr. Horton.

25. At approximately 10:00 p.m. on December 25, 2016, Mr. Opheim called Ms. Jones at her home, told her that he had received a message that "the gentleman" had turned down the job offer, and told Ms. Jones that the job was hers if she wanted it. Ms. Jones accepted the offer.

26. Mr. Opheim said that although there was an executive team, the decision ultimately was his to make, and he believed - in his gut - that Ms. Jones was the best one for the job.

27. Ms. Jones told Mr. Opheim that she and her husband had discussed the possibility of the offer previously, and that she wanted to accept the offer. Nevertheless, Mr. Opheim told her to take the holiday to consider it. He also told Ms. Jones that they would talk when they both got back to work after the new year.

28. Ms. Jones repeated that she was excited to get started, and was accepting the offer.

29. On January 3, 2017, Ms. Jones sent an email to Mr. Opheim which confirmed that she accepted the position, and asked for a meeting to discuss compensation further that afternoon.

30. Also on January 3, 2017, Ms. Jones also made plans to travel to corporate headquarters during the week of January 9, 2017.

31. Mr. Opheim replied to Ms. Jones' January 3, 2017 email the following day, writing that, "Everybody thinks that a mgr on the premises or living very close by is the only solution. Pro is just so screwed up org wise which I have to agree with. I think it could be done remotely but realize there are indeed very large problems with pro. I need a few days.

-5-

Sorry, we have never been in this position before. It is however all about NN which we all do our best for. Due to the continuous problems with pro over a long stretch it takes a little time to figure this one out."

32. On January 4, 2017, Ms. Jones wrote Mr. Opheim and stated that she firmly believed that the problem would go away if they reorganized and removed the undermining people. Ms. Jones emphasized that Mr. Opheim wanted a leader in that position, and that she had demonstrated her leadership. Ms. Jones added that the other managers didn't know her, and that she would not announce her goals until he named her as the manager.

33. On or before January 6, 2017, Nordic Naturals, Inc. placed Kip Horton's nameplate on the door of the office of the National Sales Manager.

34. After learning that Mr. Horton's nameplate had been put on the door of the office of the National Sales Manager, Ms. Jones called Human Resources, and demanded a meeting with the CEO on January 9th.

35. During the January 9th meeting with the CEO, Ms. Jones told Mr. Opheim that he had told her that she had the job. He did not deny this.

36. Mr. Opheim replied by saying that the Executive Team thought that Mr. Horton was a better fit. He said words to the effect of, "We need a man for this position. We need to get some testosterone into that department. You know we've had problems. We need to work that out." The CEO also said, "Please help Kip. He's going to need your help."

37. In the past, Mr. Opheim had said sexist things like there were too many women in the company, that there was too much drama, and that he needed to reduce the pay of women in the company because of the drama. Nevertheless, Ms. Jones was shocked by his explanation as to why he hired a man instead of her.

38. Immediately following that meeting with Mr. Opheim, Ms. Jones went to see Ms.
    Abundis. Ms. Jones told Ms. Abundis what Mr. Opheim had said. Ms. Abundis
    apologized, and asked Ms. Jones what she was going to do. Ms. Jones replied by saying
    that she was going to do her job - she was a professional.

39. Later that day, Ms. Jones told additional Nordic Naturals, Inc. employees the reason
    which the CEO gave for not hiring her as the National Sales Manager.

40. During the two months that Ms. Jones was Interim National Sales Manager (November 2,
    2016 through January 6, 2017), she acted decisively. For example, Ms. Jones unified the
    two (2) sales teams and sales support so that they worked together toward achieving
    common goals. The complaints which department staff had raised to Human Resources
    were no longer being raised. Ms. Jones collaborated with the Marketing Department to
    develop literature which better addressed the needs of the audiences. Ms. Jones cut
    expenses for conferences. Her department achieved the highest sales for any quarter, and
    met 100% of its goals for the year.

41. For Nordic Naturals, Inc., Ms. Jones' figurative testosterone was no substitute for the real
    thing.

42. The excuse that Mr. Horton would work on site, in contrast to Ms. Jones, was a pretext.

43. On January 9, 2017, Mr. Opheim told Ms. Jones that Mr. Horton would be working at
    corporate three (3) days per week.

44. However, later that week, Mr. Horton told Ms. Jones that this was not the arrangement at
    all, and that he would work on-site two (2) or three (3) days per week at first, but
    remotely thereafter.

45. Nordic Naturals, Inc. requires Mr. Horton to come to corporate significantly less than

Mr. Opheim claimed and which Mr. Horton agreed to come: reportedly, Mr. Horton

works onsite approximately three (3) days per month, and may not come to corporate at

all for six (6) weeks at a stretch.

46. Mr. Opheim also told Ms. Jones that Mr. Horton would be moving from Santa Barbara,

California (approximately two hundred forty (240) miles from corporate headquarters) to

San Francisco, California (approximately ninety (90) miles from corporate headquarters).

Although a year and a half have passed, Mr. Horton has not yet moved.

47. Except for gender and proximity, Mr. Opheim never claimed that Mr. Horton was more

qualified than Ms. Jones.

48. In fact, Ms. Jones was more qualified for the position than Mr. Horton. Among other

things, Ms. Jones' knowledge of the nutriceutical industry and the company was superior

to Mr. Horton's. For example, Ms. Jones had almost twelve (12) years' experience in the

nutriceutical industry; Mr. Horton had none. Ms. Jones knew the market, the customers,

and the science behind natural supplements; Mr. Horton did not. Ms. Jones had working

relationships with doctors who influence the market; Mr. Horton did not. Ms. Jones was

knowledgeable about physiology and the use of omega-3s across all specialties

(chiropractic, naturopathic, optometric, acupuncture, dentistry, psychiatry, etc); Mr.

Horton was not.

49. Regarding knowledge of the company, as of January 9, 2017, Ms. Jones knew the

product line of Nordic Naturals, Inc.; the procedures and processes to open accounts; and

the company's policies on discounting, resolving credit issues, product returns, billing.

Ms. Jones had a relationship with all of the strategic accounts, the advisory team, and

conference organizers. Ms. Jones knew what had been tried, what had worked, and what

-8-

hadn't worked.  Mr. Horton had none of this knowledge and none of these relationships.

50. Despite feeling outraged at the reasons which Nordic Naturals, Inc. gave for hiring Mr.
Horton rather than herself, Ms. Jones tried her best to make things work.

51. In contrast, Nordic Naturals, Inc. took adverse actions against Ms. Jones which ultimately
compelled her to resign.

52. Mr. Horton altered the terms, conditions and/or privileges of the position of National
Field Sales Manager.

53. For example, Mr. Horton informed Ms. Jones that he expected her to travel one (1) week
every quarter with each of the eight (8) sales representatives (leaving home on Mondays
and returning on Fridays); that the number of sales representatives would be increased to
twelve (12).  Ms. Jones told Mr. Horton that it wasn't a workable situation for someone
with a spouse, family, pet, or with a desire for a life.  Mr. Horton responded by saying,
"It's not going to get any easier for you, Judi.  It's only going to get wose.

54. The following week, Ms. Jones was told that she had been added to the calendar to work
every conference.  Conferences were scheduled nearly every weekend.

55. Because of the adverse action already taken by Mr. Horton, and because Mr. Horton not
only stated that it would only get worse, but thereafter made it worse, Ms. Jones took a
demotion and significant pay cut to the position of Senior Sales Representative as of July
1, 2017.

56. In June 2017, Nordic Naturals, Inc. hired Michael Smits (male) to replace Ms. Jones as
the National Field Sales Manager.

57. Reportedly, Mr. Smits' base salary was approximately fifty per cent (50%) greater than
the base salary paid Ms. Jones.

58. In addition to his compensation, the terms, conditions and/or privileges of Mr. Smits'
employment as National Field Sales Manager were superior to those of Ms. Jones'
employment.

59. Although he was hired in June 2017, Mr. Smits did not assume the responsibilities of
National Field Sales Manager until October 1, 2017. The travel which Mr. Horton
claimed was necessary for Ms. Jones was not performed during the period July 1, 2017
through September 30, 2017, and has not been required of any National Field Sales
Manager since Ms. Jones held that position.

60. Working at Nordic Naturals, Inc. became intolerable for Ms. Jones. On September 18,
2017, Ms. Jones submitted her resignation effective September 30, 2017.

61. Ms. Jones experienced emotional pain and suffering as a result of Nordic Natural, Inc.'s
discrimination. For example, after talking with the CEO on Christmas evening 2016, Ms.
Jones was thrilled and proud to become the National Sales Manager. She shared her
pride and joy with her husband, family and friends. It was embarrassing, demoralizing
and humiliating to tell them that she did not get the promotion after all. It was
devastating to learn that she had not been promoted because of her gender.

62. Beginning in January 2017, Ms. Jones lost confidence in her abilities and lost pride in
working for Nordic Naturals, Inc.; felt like a failure; felt angry, depressed, frustrated and
embarrassed; developed insomnia, headaches, stomach aches and chronic heartburn;
gained weight; withdrew from family and friends; and was otherwise damaged. She felt
nauseous most of the time. Blood tests revealed stress. Despite consuming thirty-six (36)
packs of Alka Seltzer weekly, her stomach remained upset. She cried a lot. She felt
nauseous on Sunday nights at the prospect of returning to work.

-10-

63. Ms. Jones' relationship with her husband suffered terribly. Although they rarely argued in the past, they began to argue a lot. Her husband believed that she became a different person (short-tempered, negative, complaining, stressed all of the time, etc.). The nurturing, caring, optimistic and upbeat woman whom he had married was gone.

64. Changes were obvious to friends and colleagues.

65. Colleagues from Nordic Naturals, Inc. started calling to check on Ms. Jones, and tell her how badly they felt about how she was being treated. Learning that she was pitied was demoralizing for Ms. Jones.

66. As a result of not being hired as the National Sales Manager, of having adverse action taken against her since Kip Horton began working as National Sales Manager, and of being constructively discharged, Ms. Jones lost and continues to lose wages and benefits, endured physical and emotional pain and suffering, lost a job which she loved, worsened her family's financial position, experienced physical and emotional pain and suffering, became liable for attorney's fees and costs, and was otherwise damaged.

67. On August 17, 2017, Ms. Jones delivered to the U.S. Equal Employment Opportunity Commission ("E.E.O.C.") an Intake Questionnaire which alleged that Nordic Naturals, Inc. had discriminated against her on the basis of sex.

68. The E.E.O.C. assigned charge no. 530-2017-03750C to the case.

69. The case was dual filed with the Pennsylvania Human Relations Commission, and assigned Case No. 201704616.

70. On October 2, 2017, Ms. Jones delivered to the E.E.O.C. a signed Charge of Discrimination, and a request that her case be dual filed with the Pennsylvania Human Relations Commission.

71. On April 3, 2018, the U.S. Equal Employment Opportunity Commission mailed Ms. Jones a Notice of Right to Sue which notified Ms. Jones that more than one hundred eighty (180) days had passed since the filing of the charge, that the E.E.O.C. was terminating the processing of the charge and issuing the Notice at Ms. Jones' request, and that Ms. Jones had a right to file a lawsuit under federal law within ninety (90) days from her receipt of the notice ("Right-to-Sue letter").

72. Ms. Jones received the Right-to-Sue letter on or about April 5, 2018.

73. This lawsuit was filed within ninety (90) days of April 5, 2018.

74. On August 22, 2018, the Pennsylvania Human Relations Commission sent a letter to Ms. Jones advising her that because it had been more than one yar since she filed her complaint with the Commission, she had the right to file a complaint in court.

75. Ms. Jones has retained counsel and incurred expenses.

## VI.    CLAIMS

### Count I
### Violation of Title VII of the Civil Rights Act of 1964

76. Paragraphs 1 through 75 are incorporated by reference.

77. Nordic Naturals, Inc. discriminated against Ms. Jones on the basis of sex (female) when it chose Kip Horton (male) rather than her to be the National Sales Manager.

78. Nordic Naturals, Inc. hired Kip Horton (male) to be the National Sales Manager rather than Ms. Jones because of her gender (female).

79. By hiring Mr. Horton rather than Ms. Jones because of his gender, Nordic Naturals, Inc. discriminated against Ms. Jones on the basis of sex.

80. Ms. Jones was damaged as a result of the illegal discrimination.

WHEREFORE Ms. Jones prays for compensatory damages (*e.g.,* pecuniary losses,

physical and emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary

losses), back wages and benefits, front pay and benefits, punitive damages, attorney's fees, costs,

and such other and further relief as are permitted by law or equity.

## Count II
## Violation of Title VII of the Civil Rights Act of 1964

81. Paragraphs 1 through 75 are incorporated by reference.

82. When Nordic Naturals, Inc. took such material adverse actions as significantly increasing
    the travel requirements, it altered the compensation, terms, conditions and/or privileges of
    Ms. Jones' employment.

83. Nordic Naturals, Inc. did not impose on Ms. Jones' male successor the same travel
    requirements or other terms and conditions which it imposed on her.

84. Nordic Naturals, Inc. took adverse action against Ms. Jones because of her sex (female).

85. Ms. Jones resigned from Nordic Naturals, Inc. because the terms and conditions of her
    employment became intolerable.

86. Ms. Jones was damaged as a result of the illegal discrimination.

WHEREFORE Ms. Jones prays for compensatory damages (*e.g.,* pecuniary losses,

physical and emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary

losses), back wages and benefits, front pay and benefits, punitive damages, attorney's fees, costs,

and such other and further relief as are permitted by law or equity.

-13-

## Count III
## Violation of Title VII of the Civil Rights Act of 1964

87. Paragraphs 1 through 75 are incorporated by reference.

88. Once Nordic Naturals, Inc. hired Mr. Smits to succeed Ms. Jones, it became clear that
    Nordic Naturals, Inc.'s compensation package for her was selected because of her sex
    (female).

89. Although the position of National Field Sales Manager was substantially equal under Ms.
    Jones and Mr. Smits, and although Ms. Jones was more qualified for the position than
    was Mr. Smits, the compensation which Nordic Naturals, Inc. provided to Mr. Smits was
    higher than the compensation provided to Ms. Jones.

90. Ms. Jones' compensation was less than Mr. Smits' compensation because of her sex
    (female).

91. Ms. Jones was damaged as a result of the illegal discrimination.

    WHEREFORE Ms. Jones prays for compensatory damages (*e.g.,* pecuniary losses,

physical and emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary

losses), back wages and benefits, front pay and benefits, punitive damages, attorney's fees, costs,

and such other and further relief as are permitted by law or equity.

## Count IV
## Violation of the Equal Pay Act

92. Paragraphs 1 through 75 are incorporated by reference.

93. Nordic Naturals, Inc. is an employer within the meaning of the Equal Pay Act.

94. Once Nordic Naturals, Inc. hired Mr. Smits to succeed Ms. Jones, it became clear that
    Nordic Naturals, Inc.'s compensation package for her was selected because of her sex

(female).

95. When Nordic Naturals, Inc. replaced Ms. Jones with Michael Smits as National Field
Sales Manager, it replaced a female with a male who was compensated at a higher rate.

96. The job which Ms. Jones performed for Nordic Naturals, Inc. was substantially equal to
that performed by Mr. Smits in terms of skill, effort, responsibility, and working
conditions.

97. The compensation differential between Ms. Jones and Mr. Smits was not *bona fide* and
was not based on a seniority system; a merit system; a system which measures earnings
by quantity or quality of production; or a differential based on any other factor other than
sex.

98. Ms. Jones was damaged as a result of the Defendant's paying Mr. Smits higher wages
than she (including but not limited to salary, commissions and/or bonuses).

WHEREFORE Ms. Jones prays for back pay, attorney's fees, costs, liquidated damages,
and such other and further relief as are permitted by law or equity.

## Count V
## Violation of Pennsylvania's Equal Pay Law

99. Paragraphs 1 through 75 are incorporated by reference.

100. Nordic Naturals, Inc. is an employer within the meaning of the Pennsylvania Equal
Pay Law.

101. Once Nordic Naturals, Inc. hired Mr. Smits to succeed Ms. Jones, it became clear that
Nordic Naturals, Inc.'s compensation package for her was selected because of her sex
(female).

102. When Nordic Naturals, Inc. replaced Ms. Jones with Michael Smits as National Field

Sales Manager, it replaced a female with a male who was compensated at a higher rate.

103. The job which Ms. Jones performed for Nordic Naturals, Inc. was substantially equal to that performed by Mr. Smits in terms of skill, effort, responsibility, and working conditions.

104. The compensation differential between Ms. Jones and Mr. Smits was not *bona fide* and was not based on a seniority system; a merit system; a system which measures earnings by quantity or quality of production; or a differential based on any other factor other than sex.

105. Ms. Jones was damaged as a result of the Defendant's paying Mr. Smits higher wages than she (including but not limited to salary , commissions and/or bonuses).

WHEREFORE Ms. Jones prays for back pay, attorney's fees, costs, liquidated damages, and such other and further relief as are permitted by law or equity.

## Count VI
## Violation of Pennsylvania Human Relations Act

106. Paragraphs 1 through 75 are incorporated by reference.

107. Nordic Naturals, Inc. discriminated against Ms. Jones on the basis of sex (female) when it chose Kip Horton (male) rather than her to be the National Sales Manager.

108. Nordic Naturals, Inc. hired Kip Horton (male) to be the National Sales Manager rather than Ms. Jones because of her gender (female).

109. By hiring Mr. Horton rather than Ms. Jones because of his gender, Nordic Naturals, Inc. discriminated against Ms. Jones on the basis of sex.

110. Ms. Jones was damaged as a result of the illegal discrimination.

WHEREFORE Ms. Jones prays for compensatory damages (*e.g.,* pecuniary losses,

physical and emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary

losses), back wages and benefits, front pay and benefits, punitive damages, attorney's fees, costs,

and such other and further relief as are permitted by law or equity.

## Count VII
## Violation of the Pennsylvania Human Relations Act

111.   Paragraphs 1 through 75 are incorporated by reference.

112.   When Nordic Naturals, Inc. took such material adverse actions as significantly
       increasing the travel requirements, it altered the compensation, terms, conditions
       and/or privileges of Ms. Jones' employment.

113.   Nordic Naturals, Inc. did not impose on Ms. Jones' male successor the same travel
       requirements or other terms and conditions which it imposed on her.

114.   Nordic Naturals, Inc. took adverse action against Ms. Jones because of her sex
       (female).

115.   Ms. Jones resigned from Nordic Naturals, Inc. because the terms and conditions of
       her employment became intolerable.

116.   Ms. Jones was damaged as a result of the illegal discrimination.

WHEREFORE Ms. Jones prays for compensatory damages (*e.g.,* pecuniary losses,

physical and emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary

losses), back wages and benefits, front pay and benefits, punitive damages, attorney's fees, costs,

and such other and further relief as are permitted by law or equity.

-17-

## Count VIII
## Violation of the Pennsylvania Human Relations Act

117.    Paragraphs 1 through 75 are incorporated by reference.

118.    Once Nordic Naturals, Inc. hired Mr. Smits to succeed Ms. Jones, it became clear that
        Nordic Naturals, Inc.'s compensation package for her was selected because of her sex
        (female).

119.    Although the position of National Field Sales Manager was substantially equal under
        Ms. Jones and Mr. Smits, and although Ms. Jones was more qualified for the position
        than was Mr. Smits, the compensation which Nordic Naturals, Inc. provided to Mr.
        Smits was higher than the compensation provided to Ms. Jones.

120.    Ms. Jones' compensation was less than Mr. Smits' compensation because of her sex
        (female).

121.    Ms. Jones was damaged as a result of the illegal discrimination.

        WHEREFORE Ms. Jones prays for compensatory damages (*e.g.,* pecuniary losses,

physical and emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary

losses), back wages and benefits, front pay and benefits, punitive damages, attorney's fees, costs,

and such other and further relief as are permitted by law or equity.

Jana R. Barnett, Esquire
Attorney for Plaintiff
PA S.Ct. I.D. 73189
Law Offices of Jana R. Barnett
1238 Cleveland Avenue
Wyomissing, PA  19610-2102
P:  610/478-1860
F:  610/478-0453
JRB@JanaRBarnettEsq.com

-18-

## JURY TRIAL DEMAND

Ms. Jones demands a trial by jury as to all issues.

Jana R. Barnett, Esquire
Attorney for Plaintiff